UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

REGINALD CATHEY,                            )
                                            )
       Plaintiff,                           )
                                            )
v.                                          )  Case No. 19-CV-0656-CVE-FHM
                                            )
BOARD OF COUNTY COMMISSIONERS               )
OF TULSA COUNTY, and                        )
SHERIFF VIC REGALADO,                       )
in his official capacity,                   )
                                            )
      Defendants.                           )

## OPINION AND ORDER

The allegations in the original complaint are summarized in the Court's prior opinion and order. Dkt. #13. After the Court granted defendants' first motion to dismiss (Dkt. # 10), and dismissed plaintiff's claims without prejudice, plaintiff filed an amended complaint (Dkt. # 14). Now before the Court is defendants' motion to dismiss the amended complaint (Dkt. # 15). Plaintiff has filed a response (Dkt. # 19), and defendants have filed a reply (Dkt. # 20).

### I.

The following are the new facts plaintiff alleges in his amended complaint (Dkt. # 14):

- The [Tulsa County Sheriff's Office (TCSO) oral interview board (Oral Board)] only asked [p]laintiff two questions regarding the Deputy II position, whereas it asked other, Caucasian applicants four questions relevant to the Deputy II position.

- Upon information and belief, eleven (11) people were promoted to Deputy II in October 2017, ten (10) of whom were Caucasian.

- Plaintiff filed a grievance on June 12, 2018[,] alleging discrimination in the Deputy hiring process. Plaintiff discussed his grievance with Undersheriff George Brown and complained that Corporal Eldridge, Captain Devoe, and

        Sergeant McCall had discriminated against him during the Oral Board questioning.

- Undersheriff Brown reviewed [p]laintiff's Oral Board test results from October 2017 and told [p]laintiff that he had scored well on two of the questions, but fared poorly on the other two. Plaintiff countered that the [Oral] Board had only asked him two questions relevant to the Deputy position. Plaintiff's assertion was supported by the fact that his test results indicated that the [Oral] Board had made substantial comments regarding [p]laintiff's two positive test responses but left no comments regarding the two purported low scores.

- In light of the suspicious grades on [p]laintiff's previous Oral Exam and [p]laintiff's explanation for the confusion surrounding his daughter, Undersheriff Brown permitted [p]laintiff to proceed with his second application for the Deputy II position. Undersheriff Brown also promised that none of the members of the October 2017 Oral Board would be on the July 2018 [Oral] Board.

- The [Oral] Board asked [p]laintiff approximately eight (8) questions relevant to the Deputy II position, which [p]laintiff feels that he answered strongly. However, the [Oral] Board also asked [p]laintiff numerous irrelevant questions about his background, family, and prior employment, just as they had previously. Just before the conclusion of the exam, Corporal Eldridge slid a note to Major Kitch, who asked [p]laintiff if the Verizon store at which he had worked was "freestanding or in a strip mall." Plaintiff answered that it was in a strip mall, which seemed to amuse the [Oral] Board.

- On July 19, 2018, the very day that [p]laintiff had taken the Oral Exam, Corporal Eldridge sent [p]laintiff a letter stating that [p]laintiff had not scored over a 75% on his screening boards, and therefore could not continue with the application process. The letter further stated that [p]laintiff had failed the Background Interview, and therefore was no[t] eligible to repeat the application process.

- Other Deputy II applicants did not find out their test results for approximately one month, which indicates that TCSO had predetermined that [p]laintiff would not be selected.

- Ultimately, approximately eleven (11) or twelve (12) applicants were promoted to the Deputy II position after the July 2018 testing process, all of whom were Caucasian.

2

- It was never explained to [p]laintiff why he was denied the promotion on the same day as his Oral Exam while other, Caucasian applicants did not find out until nearly a month later.

- However, from December 2018 until [p]laintiff resigned from [TCSO] in March 2019, he was never assigned any new detention officers to train pursuant to the Jail Training Program, while his Caucasian counterparts were assigned new detention officers to train.

Dkt. # 14, at 4-8. Defendants now move to dismiss all claims in the amended complaint under Federal Rule of Civil Procedure 12(b)(6).

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true

those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

#### A.

Defendants argue that the Board of County Commissioners (BOCC) should be dismissed as a party defendant. Dkt. # 15, at 9. Plaintiff concedes that BOCC is not a proper party defendant. Dkt. # 19, at 7. Therefore, the Court finds that defendants' motion to dismiss as to BOCC should be granted, and BOCC should be dismissed as a party defendant without prejudice. All remaining claims are analyzed as to Sheriff Regalado in his official capacity.

#### B.

Regalado argues that plaintiff has failed to state a Title VII claim for disparate treatment based on failure to promote. Dkt. # 15, at 10. Regalado argues that plaintiff has failed to allege that similarly situated individuals of a different race were treated differently than him. Id. at 11-14. Regalado argues that plaintiff fails to explain how adverse employment actions that appear to involve a promotion or reclassification to a position of more responsibility within the TCSO involved an adverse employment action or give rise to an inference of discrimination for purposes of plausibly alleging a claim of racial discrimination. Id. at 13-18. Plaintiff argues that he has stated a plausible disparate treatment claim. Dkt. # 19, at 7. Plaintiff argues that he has alleged all elements of a prima facie case of race discrimination. Id. at 8.

"Title VII of the Civil Rights Act of 1964 prohibits, among other things, discrimination on the basis of [race]." Carpenter v. Boeing Co., 456 F.3d 1183, 1186 (10th Cir. 2006). "Two types of claims are recognized under Title VII: disparate treatment and disparate impact." Id.

> "Disparate treatment" . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment . . . .
>
> Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive . . . is not required under a disparate-impact theory. Either theory may, of course, be applied to a particular set of facts.

Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

Plaintiff claims disparate treatment and disparate impact. Dkt. # 14, at 9-10. To survive a motion to dismiss, "[a] complaint raising a claim of discrimination does not need to conclusively establish the prima facie case of discrimination, but it must contain more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Bekkem v. Wilkie, 915 F.3d 1258, 1274 (10th Cir. 2019) (internal quotation omitted). It is plaintiff's burden to establish disparate treatment and disparate impact. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Id.

5

1.     Disparate Treatment

The Tenth Circuit has stated that the elements of a disparate treatment case are:

(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.

Bird v. Regents of New Mexico State University, 619 Fed. App'x 733, 741 (10th Cir. 2015)[1] (quotation marks omitted). Plaintiff belongs to a protected class—African American. Dkt. # 14, at 9-10. He also suffered an adverse employment action—he was turned down for a promotion. Id. at 9. Finally, the alleged adverse employment action took place under circumstances giving rise to an inference of discrimination—of the alleged eleven people who were promoted to Deputy II in October 2017, ten were Caucasian; approximately eleven or twelve applicants were promoted to the Deputy II position after the July 2018 testing process, all of whom were Caucasian. Id. at 4, 7. Further, the Oral Board allegedly asked plaintiff only two questions regarding the Deputy II position, whereas it asked other, Caucasian applicants, four questions relevant to the Deputy II position. Id. at 4. Finally, plaintiff received his negative test results the same day that he had taken the oral examination, whereas other, Caucasian employees, received their examination scores approximately one month later. Id. at 6-7. Regalado argues that courts have "expressed concern" about a lack of correlation between statistics and disparate treatment. Dkt. # 20, at 4. However, at this stage in the litigation, plaintiff need only state a plausible claim for disparate treatment. Regalado also argues that plaintiff failed to identify any race-based questions during his second oral examination that could have been the basis for disparate treatment. Dkt. # 15, at 12. However, based on the results

---

[1]     Unpublished decisions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

6

of the test—plaintiff was denied a promotion—the Court can infer at this point in the litigation that the test resulted in disparate treatment. The Court finds that Regalado's motion to dismiss as to disparate treatment should be denied.

2.  Disparate Impact

Plaintiff also claims disparate impact. Dkt. # 14, at 10. "A plaintiff may establish a prima facie case of disparate impact discrimination by showing that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." Carpenter, 456 F.3d at 1187 (quotation and brackets omitted). "In other words, a plaintiff must show that there is a legally significant disparity between . . . the [race] composition, caused by the challenged employment practice, of the pool of those enjoying a job or job benefit; and (b) the [race] composition of the qualified applicant pool . . . , i.e., the pool from which potential qualified applicants might come." Id. at 1193 (internal quotation and brackets omitted). "The court compares the [race] composition of those who are subject to the challenged employment practice with the [race] composition of those enjoying the benefit for which the practice selects." Id.

Here, plaintiff alleges that "TCSO has a policy, practice, and/or custom of designing the questions its Oral Board asks in order to deny African American employees promotions within TCSO. The questions are subjective and often not related to the prospective job position." Dkt. # 14, at 8. Plaintiff supports these allegations by recounting his second oral examination. There, he noticed that there were approximately nine TCSO employees on the Oral Board, all of whom were Caucasian. Id. at 6. The Oral Board asked plaintiff approximately eight questions relevant to the Deputy II position, which plaintiff felt that he answered strongly. Id. Plaintiff alleges that the Oral Board asked him numerous questions that were irrelevant, including whether he had previously

7

worked in a strip mall. Id. Plaintiff stated that he had worked in a strip mall, which allegedly seemed to amuse the Oral Board. Id. After plaintiff failed the second oral examination, he found out that approximately eleven or twelve applicants were promoted to the Deputy II position, all of whom were Caucasian. Id. at 7. Taking plaintiff's version of the facts as true, plaintiff sufficiently alleges disparate impact. The Board allegedly asked questions that allegedly caused an all-Caucasian selection of Deputy II promotions. Regalado argues that plaintiff's claims are "threadbare allegations." Dkt. # 15, at 20. However, plaintiff supports his allegations with facts demonstrating a potential disparate impact, as discussed above. The Court finds that Regalado's motion to dismiss as to disparate impact should be denied.

## C.

Regalado argues that plaintiff's equal protection claim should be dismissed. Dkt. # 15, at 22. Plaintiff's equal protection claim is the same, whether analyzed under Title VII or the Fourteenth Amendment. Carney v. City & Cty. Of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008) ("In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under . . . § 1983 or Title VII."). Because plaintiff has established a prima facie case of racial discrimination under Title VII, the Court finds that he can maintain a cause of action for a § 1983 claim under the Equal Protection Clause. The Court finds that Regalado's motion to dismiss as to plaintiff's equal protection claim should be denied.

## D.

Regalado argues that plaintiff's retaliation claim should be dismissed. Dkt. # 15, at 24. "To state a prima facie case of retaliation, [a plaintiff] must demonstrate that: (1) [he] engaged in protected opposition to discrimination; (2) [the defendant] took an adverse employment action

against [him]; and (3) there exists a causal connection between the protected activity and the adverse action." Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). Here, plaintiff filed a grievance on June 12, 2018, alleging discrimination in the Deputy hiring process. Dkt. # 14, at 5. Plaintiff discussed his grievance with Undersheriff George Brown and complained that Corporal Eldridge, Captain Devoe, and Sergeant McCall had discriminated against him during the first oral examination questioning. Id. Plaintiff alleges that, in light of the suspicious grades on his previous oral examination, he was again allowed to apply for the Deputy II position. Id. After his second oral examination, as he was exiting the room, he stopped and turned to hear Corporal Eldridge tell the rest of the Oral Board members that plaintiff was the one who had filed a grievance against him. Id. at 6. Plaintiff was denied the position. Id. Taking plaintiff's version of the facts as true for purposes of this motion, he engaged in protected opposition to discrimination when he filed a grievance, alleging discrimination in the Deputy hiring process. Regalado then took an adverse employment action against plaintiff by turning him down for the Deputy II position. And finally, plaintiff alleges a causal connection between the protected activity and the adverse action: plaintiff was denied the promotion the same day that he took the oral examination and heard the comment about his grievance, implying that the reason he was denied the promotion was because of the grievance. With all of the elements of a retaliation claim stated, the Court finds that Regalado's motion to dismiss as to plaintiff's retaliation claim should be denied.

Regalado argues that plaintiff's retaliation claim is based upon failure to investigate, which is not the case, as discussed above. Regalado also argues that plaintiff's claim is based on Sheriff Regalado's failure to assign plaintiff new trainees in his Jail Training Officer (JTO) position, which again is not the case. Finally, Regalado argues that plaintiff has failed to allege a causal connection

9

between the protected activity and the adverse action. Dkt. # 15, at 26. Regalado argues that plaintiff failed to allege that Corporal Eldridge's comment influenced the Board to deny plaintiff his promotion. Id. However, plaintiff alleges at this stage of the litigation that the Board denied plaintiff his promotion due, at least in part, to Corporal Eldridge's comment, because plaintiff was allegedly turned down for the promotion the same day that he heard the grievance comment. Dkt. # 14, at 6.

**E.**

Regalado finally argues that plaintiff's request for punitive damages should be dismissed. Dkt. # 15, at 27. "A plaintiff suing under Title VII may be awarded punitive damages if the employer engaged in discriminatory practices with malice or with reckless indifference to the plaintiff's federally protected rights." Harsco Corp. v. Renner, 475 F.3d 1179, 1189 (10th Cir. 2007) (citing 42 U.S.C. § 1981(b)(1)). "To satisfy this standard, an employer must have acted in the face of a perceived risk that its actions would violate federal law." Id. In § 1983 cases, "[p]unitive damages are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Here, as in the original complaint, plaintiff failed to allege malice or reckless indifference to his federally protected rights. He also failed to allege evil motive or intent. Therefore, the Court finds that Regalado's motion to dismiss as to punitive damages should be granted

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss the amended complaint (Dkt. # 15) is **granted in part and denied in part**: it is **granted** as to all claims against the Board of County Commissioners of Tulsa County and as to the request for punitive damages, and it is **denied** as to all other claims.

**IT IS FURTHER ORDERED** that the Board of County Commissioners of Tulsa County is dismissed without prejudice and is **terminated as a party defendant**. The parties shall amend the case caption to reflect that there is one defendant remaining. Defendant Sheriff Vic Regalado's answer to the amended complaint (Dkt. # 14) is due no later than **July 9, 2020.**

**DATED** this 25th day of June, 2020.

                                                                                       *[signature]*
                                                  CLAIRE V. EAGAN
                                                  UNITED STATES DISTRICT JUDGE