# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REGINALD CATHEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-0656-CVE-SH |
| | ) | |
| SHERIFF VIC REGALADO, | ) | |
| in his Official Capacity, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court are defendant's motion for summary judgment (Dkt. # 48); plaintiff's response (Dkt. # 57); defendant's reply (Dkt. # 64); defendant's motion in limine (Dkt. # 49); and plaintiff's response to defendant's motion in limine (Dkt. # 58). This case arises from plaintiff, a former employee of the Tulsa County Sheriff's Office (TCSO), alleging acts of disparate treatment based on race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 (counts 1, 3-4); disparate impact based on race under Title VII (count 2); and workplace retaliation under Title VII (count 5). Dkt. # 14, at 9-14.

## I.

The following facts are undisputed: TCSO hired plaintiff as a detention officer (DO) for the David L. Moss Criminal Justice Center (Tulsa County jail) in January 2017. Dkt. # 48, at 11; Dkt. # 57, at 10, 22. TCSO's DO hiring process required plaintiff to complete a DO "background book,"[1]

---

[1]   The background book is a form questionnaire that TCSO applicants fill out with information including: work history, references, family history, criminal history, financial liabilities, traffic accident history, and so forth. See, e.g., Dkt. # 48-14.

and successfully pass a background check and background interview.  Dkt. # 48, at 11; Dkt. # 57, at 10.  In October 2017, plaintiff initiated the reclassification (promotion) process to become a deputy sheriff.  Dkt. # 48, at 13; Dkt. # 57, at 11.  TCSO's procedure for reclassification to deputy sheriff requires applicants to repeat the employment process, that is, complete a background book and successfully pass a background check and background interview.  Dkt. # 48, at 11-12; Dkt. # 57, at 10.  Accordingly, plaintiff completed another background book in October 2017.  Dkt. # 48, at 13; Dkt. # 57, at 11.  The background books, which plaintiff completed as part of the DO and deputy sheriff hiring process, state that "incomplete or inaccurate answers may be grounds for rejection or removal; whether intentional or inadvertent, omissions are taken very seriously[.]" Dkt. # 48, at 13, Dkt. # 57, at 12.  Further, plaintiff signed an attestation in each background book that he completed, which states "I hereby certify that all statements made in this questionnaire are true, complete, and correct to the best of my knowledge and belief, and are made in good faith.  I understand that any false information, misstatement or omission of material fact may disqualify me or result in my dismissal."  Dkt. # 48, at 13; Dkt. # 57, at 12; see also Dkt. ## 48-14, 48-15, 48-16 (emphasis in originals).

The next step in the reclassification process is an interview with an oral review board (ORB), which is comprised of experienced TCSO law enforcement officers.  Dkt. # 48, at 12; Dkt. # 57, at 10-11.  Pursuant to TCSO policy, "to ensure that all applicants are scored as objectively as possible, the same oral screening board members are used to interview each" applicant for deputy sheriff and "each board member is given a pre-approved list of generic questions and law enforcement scenario questions and tasked with individually rating the applicants' answers to those questions on a scale from 0 to 100."  Dkt. # 48-44, at 3 (affidavit of Christina Morrison, former TCSO Director of Human

Resources).  "A combined score of 75% is required to pass.  Each member is also given a pre-approved list of background interview questions; however, because every applicant's background is different, during the background interview portion of the oral screening board the members may inquire beyond the pre-approved list[.]" Id.

Prior to the background interview, ORB members are provided with "the candidate's completed background book, a synopsis thereof, the candidate's resume, personnel file and any prior testing packets, which includes previously completed background books and scoring sheets." Dkt. # 48, at 12; Dkt. # 57, at 11.  ORB members are "the sole decision makers as to whether a candidate for reclassification passes the background interview and proceeds to the next step of the reclassification process (executive interview by the Sheriff and Undersheriff)." Dkt. # 48, at 13; Dkt. # 57, at 11.  During the interview, the ORB may ask a candidate questions pertaining to his background, and the candidate is "given an opportunity to explain any inconsistencies that might appear in his background."  Dkt. # 48, at 12; Dkt. # 57, at 10-11.  Successful deputy sheriff candidates must be "honest, forthright, accurate, and take the application process seriously . . . [and they] must be able to accurately investigate and memorialize the relevant events of every arrest in which they take part."  Dkt. # 48, at 13-14; Dkt. # 57, at 12.

In November 2017, plaintiff proceeded to the ORB phase of the reclassification process.  Dkt. # 48, at 16; Dkt. # 57, at 14.  Three Black DO candidates, including plaintiff, proceeded to the ORB phase.  Dkt. # 48, at 16; Dkt. # 57, at 14.  Plaintiff was interviewed by the November 2017 ORB, comprised of Captain Derek DeVoe, Sergeant Tracy McCall, and Corporal Marshall Eldridge.  Dkt. # 48, at 15; see also Dkt. ## 48-27, 48-28, 48-29.  According to the record, plaintiff's DO and October 2017 deputy background books reveal numerous inconsistencies, such as: different job titles

and salaries for the same positions, compare Dkt. # 48-14, at 9-10, with Dkt. # 48-15, at 9-10, and omissions in the deputy book including pertinent information as to family history, family criminal history, previous applications to other law enforcement agencies, traffic accident history, participation in any civil actions, and financial history, compare Dkt. # 48-14, at 12, 16-17, 20, 22-24, with Dkt. # 48-15, at 12, 15-16, 19, 21-23.[2]   Additionally, based on the information that plaintiff filled in, his October 2017 deputy background book appears to indicate that he "worked 24.28 hours per day between June 2005 and May 2008." Dkt. # 48, at 19, Dkt. # 57, at 16.   According to defendant, plaintiff's apparent indication that he worked 24.28 hours per day between June 2005 and May 2008 gave rise to Sergeant McCall and Corporal Eldridge commenting that plaintiff must be Jamaican–an alleged reference to a comedic skit where "each Jamaican character has an absurd number of jobs[.]" Dkt. # 48, at 19; Dkt. # 57, at 16.   In addition to the ORB members' comments that plaintiff must be Jamaican, plaintiff testified that he believed that he never had a chance to pass the ORB screening because he was asked two law enforcement scenario questions only, while other applicants were asked four.  Dkt. # 48-1, at 7; see also Dkt. # 48, at 18.

Each member of the November 2017 ORB affirmed that they voted to "fail [plaintiff] on his background interview" because plaintiff  "failed to adequately explain the inconsistencies in his background information set forth on his resume, his background investigation questionnaire to become a [d]etention [o]fficer, and his background investigation questionnaire to become a [d]eputy

---

[2]     The Court notes that plaintiff disputes the materiality of the inconsistencies between the DO background book and the October 2017 deputy background book, Dkt. # 57, at 13; however, plaintiff does not dispute that these background books are inconsistent with each other.

[s]heriff."[3]  Dkt. # 48-27, at 1; Dkt. # 48-28, at 1-2; Dkt. # 48-29, at 1-2.  Seven candidates, including plaintiff and five Caucasian applicants, failed the background interview portion of the November 2017 ORB phase of the reclassification process.  Dkt. # 48, at 16; Dkt. # 57, at 14.  Further, one Black candidate "successfully completed all phases of the reclassification process in Nov[ember] 2017 . . . and now serves as a [d]eputy [s]heriff for TCSO" and the other Black candidate who applied in November 2017 "subsequently completed all phases of the reclassification process in April 2019 . . . and now serves as a [d]eputy [s]heriff for TCSO."  Dkt. # 48, at 16-17; Dkt. # 57, at 14.  Thus, of the three Black DO candidates who proceeded to the ORB phase of the reclassification process in November 2017, two successfully completed the process eventually and currently serve as deputies for TCSO.  Dkt. # 48, at 16-17; Dkt. # 57, at 14.

According to TCSO policy, "candidates for reclassification or promotion who fail to pass either the background check or background interview are no longer eligible to repeat the application process."  Dkt. # 48, at 11; Dkt. # 57, at 10.  However, on December 1, 2017, plaintiff was notified by TCSO's human resources (HR) department that he did not pass the ORB "screening boards," but that he "will be eligible to retest at the next written test."[4]  Dkt. # 48-3.  Accordingly, plaintiff initiated the reclassification process again in June 2018, but subsequently learned that he was not

---

[3]    The Court notes that plaintiff denies that he failed the background interview because the ORB believed plaintiff failed to adequately explain the inconsistencies in his background, Dkt. # 57, at 13; however, plaintiff does not deny that all of the November 2017 ORB members signed affidavits stating that they voted to fail plaintiff because of the inconsistencies in his background information, Dkt. ## 48-27 (Captain DeVoe affidavit), 48-28 (Sergeant McCall affidavit), 48-29 (Corporal Eldridge affidavit).

[4]    Although there appears to be a dispute over whether plaintiff was mistakenly informed that he was eligible to retest, compare Dkt. # 48, at 16, with Dkt. # 57, at 14, plaintiff does not dispute that he was informed on December 1, 2017 that he failed the ORB screening boards and that he was eligible to retest.

eligible to re-apply because he failed his background interview in November 2017.  Dkt. # 48, at 16; Dkt. # 48-1, at 6.  Corporal Eldridge (a November 2017 ORB member who was supervising the HR department at that time) informed plaintiff that he was no longer eligible to retest and suggested that plaintiff file a grievance, and plaintiff did so.  Dkt. # 48, at 16; Dkt. # 57, at 14.  Plaintiff's grievance states, in pertinent part, "I was the only [B]lack male D.O. to make it to the oral board stage and I wasn't given the same chances as my white co-workers[.]"[5]  Dkt. # 48, at 16; Dkt. # 57, at 14. According to plaintiff, he believed that the ORB racially discriminated against him based on the following: 1) the November 2017 ORB "asked him half as many law enforcement scenario questions as the other applicants were asked"; 2) during the November 2017 ORB, "Sergeant McCall commented that [p]laintiff held so many jobs at the same time he must be Jamaican"; 3) during his November 2017 ORB, "Corporal Eldridge followed up Sergeant McCall's comment by asking [p]laintiff how many jobs he worked besides being a [d]etention [o]fficer since he is a Jamaican"; 4) after the November 2017 ORB, plaintiff "conducted a personal investigation" that led him to believe that there is a culture of racial discrimination at TCSO.  Dkt. # 48, at 18; Dkt. # 57, at 15.

Undersheriff George Brown investigated plaintiff's grievance, which included speaking to Corporal Eldridge.  Dkt. # 57-3, at 2 (George Brown deposition); Dkt. # 57, at 22; Dkt. # 64, at 2. In his deposition testimony, Undersheriff Brown states that he "spoke to Corporal Eldridge about the process . . . [whether Corporal Eldridge] felt there were any issues with the process like

---

[5]     The Court notes that in his grievance, plaintiff distinguishes himself as the only Black <u>male</u> who made it to the ORB phase of the reclassification process.  However, plaintiff does not allege sex-based discrimination in his complaint; thus, the Court will analyze plaintiff's claims in the context of race-based discrimination only.

inconsistences or if anything would target a certain race or if there were any instances where [Corporal Eldridge] felt that there was racial discrimination in the process." Dkt. # 57-3, at 2-3.

On June 29, 2018, in response to plaintiff's grievance, Undersheriff Brown "granted [p]laintiff a waiver that overruled policy and gave [p]laintiff relief by restoring his eligibility for the [d]eputy application process." Dkt. # 48, at 20; Dkt. # 57, at 16. Specifically, Undersheriff Brown's letter addressing plaintiff's grievance states that Undersheriff Brown personally reviewed plaintiff's personnel file and background books, and found that, pursuant to TCSO policy, plaintiff is not eligible to retest because he failed the background interview. Dkt. # 48-4, at 6; Dkt. # 57-5, at 1. However, Undersheriff Brown informed plaintiff that "upon further investigation into this matter, it has been determined [that] the inconsistencies in [plaintiff's] background were neither intentional nor deceptive. Therefore, [plaintiff] will be granted relief, and remain eligible for testing for the Detention-to-Deputy application process." Dkt. # 48-4, at 6; Dkt. # 57-5, at 1. During his deposition, Undersheriff Brown testified that in waiving TCSO policy for plaintiff, he wanted to give plaintiff "the benefit of the doubt, allow him to retest, and let the process take over and indicate whether or not [plaintiff] was suitable for employment." Dkt. # 57-3, at 7.

On July 2, 2018, plaintiff met with Undersheriff Brown, discussed the letter responding to plaintiff's grievance, and plaintiff then signed Undersheriff Brown's letter. Dkt. # 48, at 20; Dkt. # 57, at 16. Undersheriff Brown provided plaintiff with a copy of his grievance response letter, and filed plaintiff's original grievance and the response letter "in TCSO's central grievance file kept with the [u]ndersheriff's executive assistant . . . in compliance with TCSO policy . . . [which] requires all documents prepared during any grievance procedure to be maintained in a central file with limited personnel access." Dkt. # 48, at 20; Dkt. # 57, at 16. During his investigation into plaintiff's

7

grievance, Undersheriff Brown "never disclosed to anyone his reasoning for waiving policy in this instance and allowing [plaintiff] to be eligible to retest again for [d]eputy." Dkt. # 48, at 20; Dkt. # 57, at 17.

In July 2018, plaintiff re-applied for the deputy position and completed a second deputy background book. Dkt. # 48-16. During the July 2018 reclassification process, Corporal Eldridge, who was supervising the HR department at that time, conducted plaintiff's background investigation and wrote a synopsis of his findings, which he provided to the July 2018 ORB. Dkt. # 57, at 23; Dkt. # 64, at 2. Corporal Eldridge's synopsis stated:

> Initially, [plaintiff] applied for the first [d]eputy posting of 2018. [Plaintiff] was told that he was not eligible by TCSO Policy 4-02 to re-apply for the [d]eputy [p]osting since he failed the [b]ackground [i]nterview portion of his [s]creening [b]oard. All three [b]oard [m]embers made the same recommendation that [plaintiff] was being deceptive with the answers he was providing during the [b]ackground [i]nterview, along with the information that he provided in his [deputy background book] that was inconsistent with the original information that he filled out [in] his background book when he was hired for his current position as a [d]etention [o]fficer. Therefore, the [m]embers of the [b]oard failed [plaintiff] on his [b]ackground. [Plaintiff] filed a [g]rievance in the matter and Undersheriff George Brown provided relief to the [g]rievance by allow[ing] [plaintiff] to apply for the second [d]eputy [p]osting.

Dkt. # 57, at 23; Dkt. # 64, at 2. Corporal Eldridge (Dkt. # 48-24, at 26-27), and the July 2018 ORB--comprised of Major Eric Kitch (Dkt. # 48-37, at 1), Captain Melissa Tapper (Dkt. # 48-38, at 2), Sergeant Jeffrey Freeman (Dkt. # 48-39, at 2), Sergeant Ernest Mendenhall (Dkt. # 48-40, at 2), and Corporal Michael Heisten (Dkt. # 48-41, at 2)--assert that they did not know the content of plaintiff's grievance or why Undersheriff Brown waived TCSO policy and allowed plaintiff to re-apply for the deputy position.

Notably, unlike the October 2017 deputy background book, there are few discrepancies between plaintiff's DO background book and July 2018 deputy background book. Dkt. # 48, at 21;

8

Dkt. # 57, at 18.  That is, Corporal Eldridge did not find any inconsistencies between plaintiff's DO background book and July 2018 deputy background book during his July 2018 background investigation.  Dkt. # 48-24, at 29.  Moreover, Corporal Eldridge, who was named in plaintiff's first grievance, Dkt. # 48-4, at 3-5, testified that he was in the room during plaintiff's July 2018 oral board interview because he was "proctoring the oral board," Dkt. # 57-2, at 10 (Corporal Eldridge deposition).  Similar to the November 2017 ORB, the July 2018 ORB unanimously voted to fail plaintiff, citing that plaintiff "failed to adequately explain the inconsistencies in his background information set forth on his resume, his background investigation questionnaire to become a [d]etention [o]fficer, his first background investigation questionnaire to become a [d]eputy [s]heriff and his second background questionnaire to become a [d]eputy [s]heriff.  Dkt. # 48-37, at 1; Dkt. # 48-38, at 1-2; Dkt. # 48-39, at 1-2; Dkt. # 48-40, at 1-2; Dkt. # 48-41, at 1-2.

In response to failing his background interview portion of the July 2018 oral board, plaintiff filed a second grievance on July 24, 2018.  Dkt. # 48, at 22; Dkt. # 57, at 18.  Plaintiff's grievance states, in pertinent part,

> [plaintiff] filed a previous grievance with Undersheriff [Brown] that gave [him] relief to re-apply for [the] deputy position. [Plaintiff] named [Corporal] Aldridge [sic], [Captain] DeVoe and [Sergeant] McCall in [the first] grievance . . . [Undersheriff Brown] told [plaintiff] that no one on [his] previous board would be involved in [his] next board.  So on 7-19-18 [plaintiff] went into the board and the first person [plaintiff] see[s] is [Corporal] Aldridge [sic] whom [plaintiff] ha[s] a grievance against, [Corporal Eldridge] should not have been in [his] oral board for any reason. . . . [t]his is retaliation to [plaintiff] filing the first grievance on [Corporal] Aldridge [sic] who had no business in [plaintiff's] board on the 19th of July direct bias against [plaintiff].

Dkt. # 48-7, at 1-2; Dkt. # 48, at 22; Dkt. # 57, at 18.  Moreover, according to plaintiff, "Corporal Heisten retaliated against him by colluding with Corporal Eldridge in receiving a post-it note from Eldridge and then asking the [p]laintiff at Eldridge's behest: '[w]here was the Verizon store that you

worked in–in a standalone building or in a strip mall?'" Dkt. # 48, at 23-24; Dkt. # 57, at 19. Plaintiff further assertes that "Corporal Eldridge retaliated against him by being in the same room as the oral review board and passing a post-it note to one of its members." Dkt. # 48, at 24; Dkt. # 57, at 19.

Consequently, on July 30, 2018, one of plaintiff's supervisors, Tulsa County jail administrator, David B. Parker, responded to plaintiff's second grievance. Dkt. # 48-7, at 4-5. Parker concluded that the "promotional process" plaintiff went through was "measured upon skills, knowledge and abilities." Dkt. # 48-7, at 4 (internal quotations omitted). Parker further concluded that Corporal Eldridge "is assigned to the Personnel Division and was present [at plaintiff's July 2018 oral board] for support. However his position had no decision making role within the promotional board seated." Id. Parker found no policy violations and found that plaintiff's "allegations failed to provide any evidence that can be supported by facts or tangible evidence to support [that] the board was retaliatory or bias[ed]." Id. at 5 (internal quotations omitted).

On November 7, 2018, plaintiff filed a charge of discrimination with the Oklahoma Attorney General's office and the Equal Employment Opportunity Commission (EEOC). Dkt. # 48, at 25; Dkt. # 57, at 19. In his charge of discrimination form, plaintiff alleged discrimination based on race and retaliation; that the discrimination took place from November 2017 to July 2018; and indicated that it was a "continuing action." Dkt. # 48-8, at 1. Plaintiff continued working at the Tulsa County jail for approximately seven months, until he tendered his resignation on January 18, 2019. Dkt. # 48, at 24-25; Dkt. # 48-9, at1.

10

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery[,]" Fed. R. Civ. P. 56(b), including before any discovery has been conducted.  "Movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Silverstein v. Federal Bureau of Prisons, 559 F. App'x. 739, 752 (10th Cir. 2014); see also Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff's amended complaint against defendant, Sheriff Vic Regalado in his official capacity,[6] alleges acts of disparate treatment based on race under Title VII (count 1), 42 U.S.C. § 1981 (count 3), and 42 U.S.C. § 1983 (count 4); disparate impact based on race under Title VII (count 2); and workplace retaliation under Title VII (count 5). Dkt. # 14. Defendant argues that he is "entitled to summary judgement because the members of the oral review boards who failed [p]aintiff on his background interviews had a good faith belief that [p]laintiff had not adequately investigated, memorialized and explained his own personal background in the [background books] certified as accurate by the [p]laintiff." Dkt. # 48, at 29. Plaintiff responds that "there are genuine issues of material fact requiring resolution by a jury and which preclude summary judgment in favor of [d]efendant." Dkt. # 57, at 7.

   a.    *Race-based Disparate Treatment Claims Under Title VII, § 1981, and § 1983*

The Tenth Circuit has found that "in racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under §§ 1981 or 1983 or Title VII." Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under McDonnell Douglas, 411 U.S. at 802, plaintiff "must carry the initial burden under [Title VII] of establishing a prima facie case of racial discrimination." Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

---

[6]    For purposes of the Title VII claims, the Court will consider defendant Sheriff Vic Regalado, in his official capacity, synonymous with Tulsa County Sheriff's Office (TCSO)--plaintiff's former employer.

42 U.S.C. § 2000e-2(a)(1).  To make out a prima facie case of intentional race-based discrimination under Title VII, plaintiff must show that: "1) he is a member of a racial minority"; "2) he applied and was qualified for an available position"; "3) he was rejected despite those qualifications"; and "4) the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications." Drake, 927 F.2d at 1159 (citing McDonnell Douglas, 411 U.S. at 802).  However, as a threshold matter, for disparate treatment theories of liability, "the thrust of plaintiff's case is that, compared to other like-qualified applicants, plaintiff was treated differently because of his race." Id. at 1160.  Therefore, the "thrust" of plaintiff's claims must be that he was treated differently than other, similarly situated applicants based on race.  See id.  However, it is undisputed that two other Black DOs applied for promotion to deputy and successfully completed the process.  Dkt. # 48, at 16-17; Dkt. # 57, at 14.  That is, two other Black applicants with similar qualifications to plaintiff-- fellow detention officers--went through the same TCSO reclassification process and were promoted to deputy.  Moreover, plaintiff has not presented any evidence that similarly situated White candidates were treated more favorably than plaintiff (i.e., examples of white applicants who had similar discrepancies in their background books that were nonetheless promoted to deputy).  But cf. Drake, 927 F.2d at 1160 (concluding that plaintiff made out a prima facie case of racial discrimination after making a finding that the evidence sufficiently showed that two similarly situated White applicants were treated more favorably than plaintiff).  Thus, the Court finds that plaintiff is unable to satisfy this necessary threshold question for establishing a prima facie disparate

treatment case as to defendant's failure to promote plaintiff based on race.[7]   In conclusion, summary judgment is appropriate for plaintiff's disparate treatment claims under Title VII, § 1981, and § 1983 because he is unable to meet his initial prima facie burden .

b.      Race-based Disparate Impact Claim Under Title VII

The Supreme Court has found that "the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." Watson v. Fort Worth Bank and Tr., 487 U.S. 977, 987 (1988).   "The evidence in these 'disparate impact' cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." Id.   Moreover, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." Dep't of Hous. and Cmty. Aff. v. Inclusive Communities Project, Inc., 576 U.S. 519, 542 (2015).   And, "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." Id. at 543.

Plaintiff argues that defendant's background interview portion of the reclassification process did not have a standard rubric, rank, or guidelines; thus, it was "based entirely on individual board member's subjective feelings about a candidate." Dkt. # 57, at 30.   Plaintiff also argues that the November 2017 ORB "was majority [W]hite and contained no [B]lack officers. . . . [Plaintiff] was

---

[7]      The Court notes that in his response to defendant's motion for summary judgment (Dkt. # 57), plaintiff raises for the first time a "constructive discharge" theory of liability, Dkt. # 57, at 32, which is a type of disparate treatment claim, Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1324-25 (10th Cir. 2004).   However, because plaintiff does not allege constructive discharge in his amended complaint (Dkt. # 14), the Court will not consider plaintiff's arguments as to the constructive discharge theory of liability for his disparate treatment claims.

summarily denied promotion . . . [and] [o]nly one [B]lack applicant was promoted in November 2017." Id. Even assuming, arguendo, that plaintiff points to a specific TCSO policy, plaintiff's argument fails because he did not demonstrate a sufficient causal connection between the TCSO policy and a statistical disparity. Specifically, plaintiff can point only to himself as the "statistical disparity" in hiring Black applicants as compared to White applicants. Notably, when plaintiff was prompted to point to evidence that TCSO's policies had a disparate impact on Black applicants, plaintiff stated "[m]e . . . the proof is in the pudding is me." Dkt. # 48-1, at 25. However, the Supreme Court has found that disparate impact cases focus on statistical disparities, rather than specific, isolated incidents. Watson, 487 U.S. at 987. And, the Tenth Circuit has held that "[a] sample of one is too small to demonstrate significant impact." Drake, 927 F.2d at 1161. Additionally, it is undisputed that of the three Black DO candidates who made it to the ORB phase of the reclassification process in November 2017, two of those candidates now serve as TCSO deputies. Because plaintiff has not presented any evidence of statistical disparities--let alone a causal connection between defendant's policies and any such statistical disparity--the Court finds that summary judgment is appropriate on plaintiff's disparate impact claim under Title VII.

    c.    *Workplace Retaliation Under Title VII*[8]

Under Title VII, it is unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. §

---

[8] The Court notes that in his amended complaint, Dkt. # 14, at 11-14, plaintiff alleged a retaliation claim under Title VII only; however, in his response to defendant's motion for summary judgment, plaintiff argues that he has established a prima facie case for retaliation under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, Dkt. # 57, at 30. Because plaintiff did not raise retaliation claims under § 1981 and §1983 in his amended complaint, the Court will consider his Title VII retaliation claim only.

15

2000e-3(a); see also Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012). To make out a prima facie case for retaliation under the McDonnell Douglas burden-shifting framework, 411 U.S. at 802-04, plaintiff must first establish that 1) "he engaged in protected opposition to discrimination"; 2) "a reasonable employee would have found the challenged action materially adverse"; and 3) "a causal connection existed between the protected activity and the materially adverse action." Somoza v. U. of Denv., 513 F.3d 1206, 1212 (10th Cir. 2008). The Supreme Court has held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." U. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). If plaintiff can make this initial prima facie showing, the burden of production then shifts to the employer "to produce a legitimate nondiscriminatory justification for the action[.]" Stover v. Martinez, 382 F.3d 1064, 1070-71 (10th Cir. 2004). If the employer provides such a justification, "the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination. An employee may demonstrate pretext by showing the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." Id. at 1071. Finally, even if plaintiff was wrong about whether defendant's conduct amounted to discrimination in violation of Title VII, plaintiff's "good faith belief" that defendant violated Title VII is sufficient. Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188 (10th Cir. 2002).

1.      Plaintiff's Initial Prima Facie Showing

Here, plaintiff filed a grievance alleging that defendant racially discriminated against him during the November 2017 deputy reclassification process.[9]  Therefore, the Court finds that the first factor is satisfied, that is, plaintiff engaged in protected opposition to employment discrimination. See Hennagir v. Utah Dep't of Corr., 587 F.3d 1255, 1265 (10th Cir. 2009) (finding that plaintiff's "internal grievance . . . constitute[s] protected opposition" as to her prima facie showing for retaliation).  For the second factor, plaintiff challenges defendant's failure to promote him to deputy. The Tenth Circuit has found that "[f]ailure to promote would be a materially adverse employment action" that "satisfies the second element of a retaliation claim."  Petersen, 301 F.3d at 1190.

Finally, for the third factor, plaintiff must show that his protected activity was the but-for cause of the materially adverse action.  The Court finds that a genuine dispute of material fact exists as to the third factor.  Specifically, it is undisputed that plaintiff filed a grievance alleging racial

---

[9]      The Court notes that defendant makes a timeliness argument as to the date of the incident giving rise to plaintiff's Title VII discriminatory failure to promote allegations, and the date plaintiff filed his Charge of Discrimination.  Dkt. # 48, at 35.  It is unclear whether defendant is referring to plaintiff's race-based discrimination claims only, or whether defendant argues that plaintiff's Title VII retaliation claim is also time-barred.  As to the Title VII race-based discrimination claims (counts 1-2), the timeliness argument is moot because the Court is granting defendant's motion for summary judgment as to plaintiff's race-based discrimination claims.  However, as to plaintiff's Title VII retaliation claim, plaintiff filed a grievance alleging retaliatory failure to promote on July 24, 2018 (Dkt. # 48-7, at 1-2), and his EEOC Charge of Discrimination  was signed and dated November 7, 2018 (Dkt. # 48-8, at 1), which is within the statutory time limit to file a charge, Daniels v. United Parcel Service, Inc., 701 F.3d 620, 628 (10th Cir. 2012) (finding that, generally, a plaintiff must file claims with the EEOC within 180 days of the incident giving rise to the claim, or within 300 days in states where a state agency has authority over employment discrimination claims). Moreover, plaintiff's second grievance, which alleges retaliatory failure to promote, relates back to his first grievance (the protected opposition to racial discrimination giving rise to the alleged retaliation), Dkt. # 48-7, at 1-2.  Therefore, the Court will consider both grievances in its retaliation analysis.

discrimination in his November 2017 oral board and named Corporal Eldridge in the grievance.  Dkt. # 48-4, at 1, 3.  Further, Undersheriff Brown found that plaintiff was not being intentionally deceptive, granted plaintiff relief by waiving TCSO policy as to applicants who fail the background interview, and allowed plaintiff to re-apply for the deputy position.  Id. at 6.  In his deposition, Undersheriff Brown testified that he "wanted to give [plaintiff] the benefit of the doubt, allow [plaintiff] to retest, and let the process take over and indicate whether or not [plaintiff] was suitable for employment."  Dkt. # 57-3, at 7 (emphasis added).  Further, Undersheriff Brown testified that after plaintiff filed a grievance naming Corporal Eldridge, the Undersheriff "spoke to Corporal Eldridge about the process . . . asked him if he felt there were any issues with the process like inconsistencies or if anything would target a certain race or if there were instances where [Corporal Eldridge] felt that there was racial discrimination in the process."  Id. at 3.  By contrast, Corporal Eldridge testified that Undersheriff Brown never asked him whether there was anything racially discriminatory as to plaintiff's November 2017 oral board.  Dkt. # 48-24, at 26.

After he failed the July 2018 oral board, plaintiff filed a second grievance that stated that, prior to his July 2018 oral board, Undersheriff Brown told plaintiff that "no one [from his] previous board would be involved in [his] next board[.]" Dkt. # 48-7, at 1.  Notwithstanding, it is undisputed that Corporal Eldridge completed plaintiff's second background investigation and wrote a synopsis for the July 2018 ORB, which stated, in pertinent part,

> [a]ll three [November 2017] board members made the same recommendation that [plaintiff] was being deceptive with the answers he was providing during the Background Interview, along with the information that he provided in his [deputy background book] that was inconsistent with the original information that he filled out [in] his [DO] background book . . . .  Therefore, the Members of the Board failed [plaintiff] on his Background.

18

Dkt. # 57-4, at 1.  Moreover, while Corporal Eldridge mentioned that Undersheriff Brown provided relief for plaintiff's grievance by allowing him to retest, there is no mention in the synopsis that Undersheriff Brown made an explicit finding that plaintiff was not being intentionally deceptive. Id.  And, Corporal Eldridge and the five members of plaintiff's July 2018 ORB affirmed that they were not aware of the content of plaintiff's grievance or Undersheriff Brown's finding that plaintiff was not intentionally deceptive.

Further, it is undisputed that Corporal Eldridge was in the room during plaintiff's July 2018 oral board.  Corporal Eldridge testified that despite having knowledge that plaintiff filed a grievance related to the November 2017 ORB (the ORB that Eldridge was a part of) he did not feel it was inappropriate for him to be in the room during plaintiff's July 2018 oral board because he was "not grading [plaintiff] on anything[,]" and Corporal Eldridge was "not passing judgment on [plaintiff]." Dkt. # 48-24, at 36.  However, plaintiff testified that, during his July 2018 interview, Corporal Eldridge passed a note to one of the July 2018 ORB members that apparently contained specific questions to ask plaintiff.  Dkt. # 57-9, at 1-2; Dkt. # 48-1, at 17-18.  And, plaintiff further alleges that, immediately after plaintiff's interview concluded, Corporal Eldridge approached the July 2018 ORB and began speaking to them while plaintiff was within earshot.  Dkt. # 57-9, at 1-2; Dkt. # 48-1, at 17-18.  The July 2018 ORB voted to fail plaintiff on his background interview, citing plaintiff's failure to adequately explain the inconsistencies between his resume, DO background book, October 2017 deputy background book, and July 2018 deputy background book.

In other words, plaintiff filed a grievance and Undersheriff Brown granted plaintiff relief to re-apply for deputy and "let the process take over."  However, the ensuing "process" permitted Corporal Eldridge, who was intimately involved in the November 2017 oral board (that was the

19

subject of racial discrimination allegations), to write the synopsis of plaintiff's background that alerted the July 2018 ORB to plaintiff's intentional deceptiveness and that plaintiff filed a grievance. The "process" apparently did not include informing the July 2018 ORB that Undersheriff Brown found plaintiff was in fact <u>not</u> being intentionally deceptive.  Defendant argues that the content of grievances are revealed on a "need-to-know basis."  Dkt. # 64, at 5.  However, the July 2018 ORB members--the "sole decision makers" as to plaintiff's second promotion attempt, Dkt. # 64, at 7-- were evidently not included in the "need-to-know" category.  Consequently, even though plaintiff was given a second opportunity and corrected the inconsistencies between his DO background book and October 2017 deputy background book, the July 2018 ORB still held the same inconsistencies against him in his second oral board and denied him the promotion.  Thus, the Court finds that there are enough facts here such that a reasonable jury could find that plaintiff's grievance was the but-for cause of defendant's failure to promote him during his second application for promotion to deputy.

2.      Defendant's Burden to Produce a Legitimate Nondiscriminatory Reason

Once plaintiff meets his initial burden to make out a prima facie retaliation case, the burden of production shifts to defendant to offer a legitimate, nondiscriminatory reason for failing to promote plaintiff.  <u>Stover</u>, 382 F.3d at 1070-71.  Defendant proffers that 1) TCSO's grievance procedure "cabins grievances from retaliation"; 2) Corporal Eldridge's involvement in plaintiff's second deputy reclassification attempt was "inconsequential" because the July 2018 ORB members were "the *sole decision makers* as to whether a candidate for reclassification passes the background interview" (emphasis in original); 3) plaintiff "cites to no governing procedure" in making the argument that Corporal Eldridge's presence at his second oral board was "procedurally improper"; and 4) the July 2018 ORB failed plaintiff on his background interview after inquiring into plaintiff's

20

"concerning discrepancies among his [DO], [October 2017 deputy background book], and [July 2018] [d]eputy [b]ackground [b]ooks," and that decision was independently reviewed and affirmed" by plaintiff's direct supervisors.  Dkt. # 64, at 5-8.  The Court finds that defendant met his burden of production to offer a legitimate, nondiscriminatory reason for failing to promote plaintiff; specifically, the discrepancies in plaintiff's background books, and plaintiff's failure to adequately explain these discrepancies during his oral board.

        3.      Plaintiff's Burden to Show Pretext

Once defendant provides a legitimate, nondiscriminatory reason for failing to promote plaintiff, "the burden shifts back to [plaintiff] to provide evidence showing that [defendant's] proffered reason is a pretext for discrimination."  Stover, 382 F.3d at 1071.  Plaintiff may demonstrate pretext by showing that defendant's "proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief."  Id. at 1071.  Here, the core of defendant's proffered nondiscriminatory reason is the discrepancies in plaintiff's background.  However, the operative facts indicate that 1) plaintiff filed a grievance naming Corporal Eldridge; 2) Corporal Eldridge was thereafter permitted to conduct plaintiff's background investigation and provide a synopsis alerting the July 2018 ORB to plaintiff's background discrepancies and the November 2017 ORB's conclusion that plaintiff was being intentionally deceptive; 3) the July 2018 ORB was not apprised of Undersheriff Brown's finding that plaintiff had not been intentionally deceptive in his October 2017 deputy background book; 4) Corporal Eldridge was present at plaintiff's July 2018 ORB, and was passing notes to an ORB member containing questions that related back to plaintiff's November 2017 oral board (which gave rise to plaintiff's first grievance as to racial discrimination); and 5) plaintiff's testimony that, as soon as his interview was over, Corporal Eldridge approached

the July 2018 ORB and began discussing something with them.  Moreover, despite defendant giving plaintiff a second opportunity to apply for deputy and to submit a new, corrected background book, the July 2018 ORB held the very same discrepancies against plaintiff as the November 2017 ORB. Therefore, a reasonable jury could find that defendant's reasoning for failing to promote plaintiff after his July 2018 ORB was so implausible, contradictory, inconsistent, and incoherent, that it is unworthy of belief.  In sum, the Court finds that there is a genuine factual dispute as to whether defendant's proffered reason for failing to promote plaintiff is pretextual; thus, defendant's motion for summary judgment as to plaintiff's Title VII retaliation claim should be denied.

## IV.

Defendant moves the Court to exclude certain evidence at trial.  Dkt. # 49, at 2.  Specifically, defendant moves to preclude mention of or reference to 1) "alleged comments made by deputy applicants regarding their oral board experiences"; 2) six previous racial discrimination cases to substantiate that "TCSO has a long history of racial discrimination"; 3) "settlement or verdicts in other cases"; 4) the jury using its verdict to "send a message"; 5) "reptile theory" or "golden rule" arguments; 6) argument that internal policy violations, standing alone, constitute pretext for purposes of plaintiff's racial discrimination or retaliation claims; 7) argument that "TCSO policy is constitutionally, statutorily, or otherwise deficient"; 8) "policies not in effect when plaintiff was employed"; 9) "testimony or evidence concerning society at large"; 10) improper expert testimony from lay witness; 11) "documents not produced during discovery"; 12) "damages for front or back pay"; 13) "Article in the Frontier"; 14) "testimony with regard to code of silence or unverified conspiracy"; and 15) "corporate or entity-wide knowledge liability[.]" Dkt. # 49, at 5-14.

22

As a preliminary matter, plaintiff does not oppose defendant's motion in limine as to 1) the jury using its verdict to "send a message"; 2) "golden rule" arguments; 3) documents not produced in discovery; 4) damages for front or back pay; 5) Frontier article; and 6) testimony as to "code of silence" or "unverified conspiracy[.]" Dkt. # 58, at 6, 8-9.  Therefore, the Court finds that defendant's motion in limine as to those six items should be granted.

Next, as to precluding mention of or reference to 1) alleged comments made by deputy applicants regarding their oral board experiences; 2) previous racial discrimination cases as evidence of TCSO's long history of racial discrimination; 3) evidence of past settlements or verdicts; 4) "reptile theory" arguments; 5) argument that internal policy violations, standing alone, constitute pretext for purposes of plaintiff's racial discrimination claim; 6) argument that "TCSO policy is constitutionally, statutorily, or otherwise deficient"; 7) "policies not in effect when plaintiff was employed"; 8) "testimony or evidence concerning society at large"; 9) improper expert testimony from lay witness; and 10) "corporate or entity-wide knowledge liability," the Court finds that, insofar as these items are relevant to plaintiff's race-based discrimination claims under Title VII, § 1981, and § 1983, defendant's motion in limine is moot because the Court has granted summary judgment on those claims (counts 1-4).  Further, in the event that any of the above items relate to plaintiff's retaliation claim, defendant may raise any well-founded objection at trial.

Finally, as to precluding any argument that internal policy violations, standing alone, constitute pretext for purposes of plaintiff's retaliation claim, the Court finds defendant's motion vague and overly-broad.  Moreover, the Court will instruct the jury on the law, including plaintiff's burden of proof for showing pretext.  Thus, the Court finds that defendant's motion in limine as to argument that internal policy violations, standing alone, constitute pretext for purposes of plaintiff's

retaliation claim should be preliminarily denied without prejudice; however, defendant may raise any well-founded objections at trial.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 48) is **granted in part** as to plaintiff's race-based discrimination claims (counts 1-4) based on plaintiff's failure to establish a prima facie case under Title VII, § 1981, and § 1983; and **denied in part** as to plaintiff's Title VII retaliation claim (count 5) because genuine disputes of material fact exist such that a reasonable jury could find for plaintiff.

**IT IS FURTHER ORDERED** that defendant's motion in limine (Dkt. # 49) is **granted in part** as to those parts of the motion, as stated in Part IV, <u>supra</u>, that are unopposed by plaintiff; **moot in part** as to those parts of the motion, as stated in part IV, <u>supra</u>, that are relevant only to plaintiff's race-based discrimination claims; and **denied in part without prejudice** as to the part of the motion, as stated in Part IV, <u>supra</u>, concerning internal policy violations constituting pretext for purposes of plaintiff's retaliation claim.

**DATED** this 11th day of March, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE